UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT M. SALAZAR, | : | CIVIL ACTION NO. 3:CV-11-2192 |
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| WARDEN BRYAN BLEDSOE, | : | |
| Respondent | : | |

FILED SCRANTON
JUN 2\[?\] 2013
PER _____
DEPUTY CLERK

## MEMORANDUM

Robert M. Salazar, an inmate currently confined in the Victorville United States Penitentiary, Adelanto, California, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing held on February 1, 2010, at Canaan United States Penitentiary, Waymart, Pennsylvania, where he was found guilty of the prohibited act of Use of Any Narcotic, or Related Paraphernalia not Prescribed for the Individual by Medical Staff, a violation of Disciplinary Code Section 112. Specifically, he challenges that urine sample collection, the testing of his urine sample, the incident report, and the disciplinary process in general, claiming, inter alia, that he received excessive sanctions, in violation of Bureau of Prisons Policy Statement 5270.07. (Doc. 1, petition). For relief, Petitioner seeks the expungement of the incident report and sanction, and restoration of his forfeited good conduct time. (Doc. 8, traverse). The petition is ripe for disposition and, for the reasons that follow, will be denied.

## Background

On January 22, 2010, Petitioner was served with Incident Report No. 1969936 charging him with "Use of Narcotic not Prescribed by the Medical Staff", a Code 112 violation. (Doc. 7, Ex.

B, Incident Report). The incident report, which was written by B. Roberts, Special Investigative Technician, reads as follows:

> On January 22, 2010, at 12:45 p.m., the SIS Office received a urine test result from National Toxicology Laboratories. The test results report indicates specimen #BOP0001057573 has tested positive for the drug Opiates. Urine surveillance records indicate that said specimen was provided by inmate [Salazar, Robert , 93398-012][1] to SIS Tech, B. Roberts, on January 12, 2010, at 3:08 p.m. This specimen was assigned to the Suspect Use category. Information obtained from the Health Services Department indicates that the above named inmate was not prescribed any medication that would have resulted in a positive testing for the drug Opiates.

(Id.). On January 25, 2010, Petitioner appeared before the Unit Discipline Committee ("UDC"). See (Id., Committee Action). The UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. During the UDC hearing, staff member, R.A. Brassard, informed Salazar of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 11, Inmate Rights at Discipline Hearing).

Also on January 25, 2010, Salazar was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 10). Salazar waived his rights to have a staff member represent him and to call witnesses. (Id.). On February 1, 2010, Petitioner appeared for a hearing before DHO, Marc A. Renda. (Doc. 7-1, Ex. B, DHO Report). During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. (Id.). The DHO confirmed that

---

[1] Although the incident report has another inmate's name typed in the body, this appears to be nothing more than a typographical error as Salazar's name is inserted into the document. Moreover, Salazar signed the chain of custody form indicating he provided the specimen for a drug screen, the container was sealed with tamper proof seal in his presence, and the specimen number on the form was the same specimen number affixed to the label on Salazar's specimen. Additionally, that specimen number attested to by Salazar was accurately recorded on the report indicating that particular specimen tested positive for opiates. See (Doc. 7-1, Federal Bureau of Prisons Chain of Custody Form).

2

Salazar received a copy of the incident report, and that he did not want a staff representative, or to call witnesses. (Id.).

Petitioner offered the following statement on his behalf:

"Yes, I provided the sample. Yes, I got a problem. My last shot was in 2006. I have numerous incident reports for use of drugs. I tried to do the right thing. It happens to the best of us."

(Id.).

Petitioner also raised a procedural issue that no documentary evidence was provided for his consideration. (Id.). Specifically, Salazar "requested the DHO expunge the incident report, averring that the description of the incident (section #11) reflected the incorrect inmate, and also requested review of the Federal Bureau of Prisons Chain of Custody Form and lab report." (Id.). The DHO "elucidated this erratum does not warrant expungement", stating that "this is based on the fact the erratum (incorrect inmate cited in the narrative) was corrected by institution staff, and his name is correctly reflected in not only section two of the incident report but also other supporting materials (memoranda and Federal Bureau of Prisons Chain of Custody Form)." (Id.). The DHO permitted Salazar to peruse these materials, whereby he acknowledged the specimen identification number (#0001057573) corresponds with that cited in the description of the incident, lab report, as well as Federal Bureau of Prisons Chain of Custody Form affirmed with his signature. (Id.).

The documentary evidence which the DHO considered in making his determination included: (1) Memorandum dated January 19, 2010, from B. Roberts, SIS Technician; (2) National Toxicology Laboratories Report, dated January 18, 2010, (Specimen ID: BOP0001057573); and (3) National Toxicology Laboratories and Federal Bureau of Prisons Chain of Custody for Drug

3

Analysis form, reflecting date of collection on January 12, 2010. (Id. at p. 2). Confidential information was used by the DHO in support of his findings, but was not revealed to the inmate. (Id.). The confidential information was documented in a separate report. The specific evidence taken from the relied upon documentary evidence was as follows:

> The DHO finds based on some facts, that on January 12, 2010, inmate Salazar submitted a urine sample which subsequently tested positive for Opiates.
>
> Specific evidence relief on to support this finding is the account of the reporting staff member, as reflected in the incident report. He indicates "On January 22, 2010, at 12:45 p.m., the SIS Office received a urine test result from National Toxicology Laboratories. The test results report indicates specimen #BOP0001057573 has tested positive for the drug Opiates. Urine surveillance records indicate that said specimen was provided by inmate [Polk, Terrell, #58001-054 removed from the record] SALAZAR, ROBERT #93398-012, to SIS Tech, B. Roberts on January 12, 2010, at 3:08 p.m. This specimen was assigned to the Suspect Use category. Information obtained from the Health Services Department indicates that the above named inmate was no prescribed any medication that would have resulted in a positive testing for the drug Opiates.
>
> Other evidence to include a National Toxicology Laboratories and Federal Bureau of Prisons Chain of Custody for Drug Analysis form, reflecting date of collection on January 12, 2010; National Toxicology Laboratories Report dated January 18, 2010 (Specimen ID: BOP0001057573) indicating a confirmed positive reading for Opiates was also considered, as well as Salazar's verbal statement to the DHO, "Yes, I provided the sample. Yes, I got a problem. My last shot was in 2006. I have numerous incident reports for use of drugs. I tried to do the right thing. It happens to the best of us."
>
> The DHO considered all evidence and has drawn the conclusion based on some facts, the prohibited act of Use of any Narcotic, or Related Paraphernalia not Prescribed for the Individual by Medical Staff, Code 112, was committed.

(Id.). The DHO sanctioned Petitioner to disallowance of forty (40) days good conduct time; forfeiture of non-vested good conduct time 180 days; sixty (60) days disciplinary segregation, expiring 4/1/2010; two (2) years loss of commissary privileges, concluding on 2/1/2012; three (3)

4

years loss of visit privileges, expiring 2/1/2013; three (3) year loss of visitation privileges, beginning upon reinstatement of visiting privileges to include immediate family and non-contact only; a two (2) year loss of telephone privileges, concluding on 2/1/2012; two (2) years loss of other privileges (TRULINCS), expiring on 2/1/2012; and loss of other privileges- sixty (60) days impound property, excluding religious and legal material. (Id.). The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to possess or use drugs or drug paraphernalia threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. In the past, inmates under the influence of drugs have become violent toward other inmates, as well as staff, and this type of behavior can not and will not be tolerated. The possession or use of illegal substances is illegal by federal law, and impedes the orderly running of a correctional institution. Illegal substances can only be obtained via unauthorized avenues.
>
> This type of behavior is egregious and the sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior. The DHO also noted this inmate previously incurred numerous disciplinary infractions for similar misconduct, and demonstrates a continued inability to abide by institution rule.
>
> The disallowance of good conduct time, forfeiture of non-vested good conduct time, and disciplinary segregation was imposed to demonstrate the seriousness of his offense and as punishment for his conduct. The loss of visiting, telephone, TRULINCS, and commissary privileges, as well as visiting restriction and impounding of property, was imposed to deter further behavior. A common avenue for the introduction of contraband, including drugs, is through the visiting room. It is hoped that these sanctions will deter Salazar and modify his behavior involving the use or possession of illicit substances, as well as others from engaging in such activities in the future.

(Id.). Salazar was advised of his appeal rights at the conclusion of the hearing. (Id.).

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process

5

Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court holds that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

Salazar's disciplinary hearing was held in January 2010. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at 28 C.F.R. § 541, et seq.,
6

and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to the 2010 regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15(k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Salazar was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report.[2] He was properly informed of

---

[2] Although Salazar contends in his petition that his due process rights were violated when he did not receive a copy of the incident report on the day the urine sample was collected on January 12, 2010, he did receive the incident report within 24 hours of the BOP's receipt of the positive test result on January 22, 2010. Thus, he did receive the incident report within 24 hours of the institution becoming aware of misconduct, and well over 24 hours before his DHO hearing on February 1, 2010.

7

his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Salazar waived his right to call witnesses, make a statement, and chose not to provide any documentary evidence.

To the extent Salazar argues the levels tested for in the urine sample violated the federal workplace drug testing program because his sample was "150 ng/ml" and the federal workplace drug testing programs require testing to be over "2000 ng/ml for the initial and confirmation tests" (Doc. 1, petition at 4), Salazar's argument is without merit. The Federal Workplace Drug Testing Program was initiated in 1986 by President Ronald Regan via Executive Order 12564 for the purpose of monitoring and remedying potential drug use by employees of the federal government. See (Doc. 7-2, Executive Order 12564, 51 Fed. Reg. 32889) (copy attached). Salazar is not an employee of the federal government. Thus, even if the 2004 proposed revisions to the Federal Workplace Drug Testing Program that Salazar cites were enacted without change, they would not apply to Salazar as he is a federal inmate and not a federal employee.

Since Salazar was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon the following: (1) Memorandum dated January 19, 2010, from B. Roberts, SIS Technician; (2) National Toxicology Laboratories Report, dated January 18, 2010 (Specimen ID: BOP0001057573); and (3) National Toxicology Laboratories and Federal Bureau of Prisons Chain of Custody for Drug Analysis form, reflecting date of collection on January 12, 2010. Based on the

foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are the sanctions available for 100-level offenses:

<u>Table 3 — Sanctions</u>

- A. Recommend parole date rescission or retardation.
- B. Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary Transfer (recommend)
- D. Disciplinary segregation (up to 60 days).
- E. Make monetary restitution.
- F. Withhold statutory good time (Note - can be in addition to A through E - cannot be the only sanction executed).
- G. Loss of privileges. (Note - can be in addition to A through E - cannot be the only sanction executed).

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. A separate Order will be issued.

Date: June 28, 2013

**United States District Judge**

9